


IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

DEBORAH J. STILLWELL,

Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

CIVIL ACTION NO. 08-G-2369-J

**MEMORANDUM OPINION**

The plaintiff, Deborah J. Stillwell, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

In the instant case, ALJ Jerome L. Munford determined the plaintiff met the first two tests, but concluded that while she has an impairment or combination of impairments considered "severe," she did not suffer from a listed impairment. In his decision, the ALJ found that the plaintiff:

> retains the residual functional capacity to perform sedentary work in a temperature controlled environment which does not require excessive exposure to gases, dust or fumes, no unprotected heights, no operation of foot controls, no frequent bending or pushing or pulling of upper extremities. She should also be allowed to sit or stand at her option.

[R. 28]. Accordingly, the ALJ found the Plaintiff not to be disabled.

**THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN OR OTHER SUBJECTIVE SYMPTOMS**

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

**THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN**

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony

must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

**THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY WHEN PAIN OR OTHER SUBJECTIVE SYMPTOMS ARE INVOLVED**

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human

Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit the plaintiff's pain testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id.

**DISCUSSION**

In his decision, the ALJ found that the plaintiff suffered from the severe impairments of "type 1 diabetes mellitus, diabetic neuropathy; depression; attention

deficit disorder; chronic obstructive lung disease and hepatitis C (non active)." [R. 28]. However, he found that the plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. . . ." [R. 22]. The ALJ concluded under step five of the sequential evaluation that the plaintiff can perform other work that exists in significant numbers in the national economy and is, therefore, not disabled.

The ALJ explicitly found plaintiff met the Eleventh Circuit pain standard: "The claimant does have underlying medical impairments which could reasonably be expected to produce some pain and limitations, however, the objectively determinable impairments fails [sic] to corroborate her allegations of a complete inability to perform all substantial gainful activities." [R. 25-26]. The ALJ found:

> the testimony of the claimant and her husband credible to the extent that the claimant's impairments, both "severe" and "not severe," when considered in combination, limit her to sedentary work in a temperature controlled environment, which does not require excessive exposure to gases, dust or fumes, no unprotected heights, no operation of foot controls, no frequent bending or pushing of upper extremities. She should also be allowed to sit or stand at her option. If she complies with her assigned residual functional capacity, her pain is reasonably expected to impose no greater than moderate functional limitations on her ability to engage in basic work activities described in 404.1521(b).

[R. 26]. This finding is not supported by substantial evidence.

At the hearing before the ALJ, the plaintiff testified that her diabetic neuropathy causes burning pain in her feet. [R. 422]. When her blood sugar drops, she becomes shaky, irritable and disoriented, and her concentration is affected. [R. 427]. She

has difficulty sleeping at night because of foot pain, and even though she takes Ambien, she is up three to four times a night. [R. 429-30]. The plaintiff takes Lyrica and Amitriptyline for her neuropathy, and these medications make her drowsy during the day and she takes frequent naps. [R. 430]. She testified that her condition causes problems with her memory and concentration. [R. 437].

The plaintiff also testified that her degenerative joint disease causes her knees, neck and shoulder to hurt, especially while sitting. [R. 439]. She estimated she could sit for 30 to 40 minutes at one time. [Id.]. She testified that out of a five-day workweek, she would generally have two "good days" and three "bad days." [R. 443]. "On a bad day," she said, "I won't get out of bed. I don't want to go nowhere, see anybody, and like I said, a lot of days, I just don't even get dressed." [Id.]. The plaintiff's husband also testified at the hearing that he had witnessed increasing difficulties with his wife's physical health, and problems with her memory and concentration. [R. 457-58].

Records from the plaintiff's treating physicians, Scott Twilley, D.O., and Dean Naden, D.O., of the Sumiton Medical Clinic from August 2005 through October 2007 show that plaintiff consistently complained of moderate to severe pain.[1] On August 23, 2005, x-rays taken of the plaintiff's cervical and lumbar spine showed degenerative joint disease and disc space narrowing. [R. 407]. Dr. Twilley's diagnoses included

---

[1] On 11 office visits from August 2005 through December 2006, the plaintiff rated her pain as a seven or eight on a 10-point scale. [R. 336, 341, 346, 350, 352, 360, 364, 368, 372, 376 and 380.].

hypertension, hyperlipidemia, degenerative joint disease, neck pain, chronic obstructive pulmonary disease, sleep apnea, insomnia, macrocytosis and type 1 diabetes. [R. 384-87]. On October 30, 2007, Dr. Naden wrote that the plaintiff had been a patient at the Sumiton Medical Clinic since 2005. [R. 333]. Her "multiple medical problems" included: hypertension; hyperlipidemia; degenerative joint disease; neck pain; low back pain; hepatitis C; anxiety/depression; polyarthralgia; normocytic anemia; allergies; attention deficit disorder; diabetes mellitus Type 1; macrocytosis; insomnia; and chronic obstructive lung disease. [Id.]. Dr. Naden's opinion was, "At present she is unable to work, secondary to the above noted conditions." [Id.].

The ALJ dismissed the opinion of Dr. Naden, stating it "appears to be based on the claimant's subjective complaints and is not supported by substantial, objective evidence of record shown on testing by Drs. Moizuddin (Exhibit 12F) and Romeo (Exhibit 15F)." [R. 27]. However, Dr. Naden's opinion contemplates a two-year treatment history, diagnoses of diabetes, neuropathy and degenerative joint disease, and consistent and frequent complaints of pain at a level of seven or eight on a 10-point scale. The ALJ stated:

> I specifically find Dr. Naden's assessment to be outweighed by the assessments of Drs. Moizuddin and Romeo, although, as the above residual functional capacity reflects, I have credited the testimony of the claimant and her husband to some extent.

[R. 27]. On March 11, 2005, Samia S. Moizuddin, M.D., examined the plaintiff at the request of the Commissioner. [R. 239-45]. Dr. Moizuddin assessed that the plaintiff has

diabetes and neuropathy, and noted she has stiffness, headaches, numbness and tingling in her toes. [R. 239]. The ALJ opines that because at Dr. Moizuddin's one-time examination, "the claimant did not use an assistive devices [sic]. Her coordination was fine and grossly intact. She had no ataxia or spasticity and was able to squat, heel and toe walk," her pain testimony was not credible. [R. 26]. However, while Dr. Moizuddin did state that the plaintiff was cooperative, he offered no opinion on whether the plaintiff suffers from pain. [R. 240]. Similarly, On November 29, 2006, Bruce W. Romeo, M.D., examined the plaintiff at the behest of the commissioner. Because "Dr. Romeo observed that Ms. Stillwell's sensory nerves were intact to vibration and pinprick, and that she could use all four extremities to climb, balance, stoop, handle and finger," the ALJ found her pain testimony was not credible. [Id.]. Neither report from these one-time examiners discredits the plaintiff's pain testimony, the testimony of the plaintiff's husband, nor the opinion of the plaintiff's treating physician. It follows that the plaintiff's pain testimony, the testimony of her husband, and the opinion of the plaintiff's treating physicians, Drs. Naden and Twilley, must be taken as true.

The ALJ found that the plaintiff is unable to return to her past relevant work. At the hearing, Dan Kinard, a vocational expert, testified that a hypothetical individual with the plaintiff's limitations with moderately-severe to severe fatigue, needing to lie down for one to two hours during the day, and with moderately-severe to severe pain, would be precluded from all work activity. [R. 473-74]. Because the

testimony of the plaintiff, her husband, and her treating physicians, Drs. Naden and Twilley, must be accepted as true, the plaintiff is unable to work.

**CONCLUSION**

For the reasons set forth above, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 14 January 2010.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.